UNITED STATES of America,
Plaintiff-Appellant,

v.

Mae Ethel WALKER,
Defendant-Appellee.

No. 77-2764.

United States Court of Appeals,
Ninth Circuit.

Feb. 10, 1978.

Certiorari Denied April 17, 1978.
See 98 S.Ct. 1625.

Christine McKenna, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellant.

Irwin H. Schwartz, Seattle, Wash., for defendant-appellee.

Before WRIGHT, CHOY and TANG, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

The government appeals from the district court's order granting defendant's motion

to suppress drugs found by an airline employee in a post-flight search on May 9, 1977, of a package shipped by commercial airline.

The district court, relying on *United States v. Fannon*, 556 F.2d 961 (9th Cir. 1977), *rehearing en banc granted* January 27, 1978, held that the airline employee was fulfilling a governmental function when he searched the package, that Fourth Amendment reasonableness standards applied, and that because the search was unreasonable its fruits must be suppressed. We reverse.

■ Our decision today does not require that we evaluate the correctness of the panel opinion in *Fannon* which is now before an en banc court. We hold that, even assuming *Fannon* to be the law of the circuit, its principles should not be applied retroactively to searches conducted before July 5, 1977, the date of the *Fannon* decision.[1]

We are guided in our decision by the principles announced by the Supreme Court in *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), concerning the retroactive effect of decisions triggering new applications of the exclusionary rule. *Peltier* considered the retroactive application of *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), and concluded that the new constitutional rule requiring suppression of evidence seized by roving border patrols in warrantless auto searches conducted without probable cause should not be applied to searches predating the *Almeida-Sanchez* decision.

The *Peltier* court explained:

[i]t is indisputable . . . that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in or-

der to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application [citing cases] (footnote deleted).

422 U.S. at 535, 95 S.Ct. at 2316.[2]

■ When considering the question of retroactivity in cases such as this, we are mindful of the primary purpose of the exclusionary rule. The rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

Appellee argues that *Fannon* did not announce a new constitutional principle but, rather, was an obvious and logical application of the rule enunciated in *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973). We disagree.[3]

In *Davis* a passenger was searched as he was about to board an airliner. The search was conducted by an airline employee at the terminal gate in close proximity to United States marshals and a customs officer. A gun was found in the passenger's briefcase, and he was subsequently prosecuted under 49 U.S.C. § 1472(1), which makes it a crime to carry weapons aboard an aircraft.

The *Davis* court held the search was "part of a nationwide anti-hijacking program conceived, directed, and implemented by federal officials in cooperation with air carriers." 482 F.2d at 897. Because the United States was "significantly involved" in the search, Fourth Amendment principles applied. The court reversed an order deny-

---

1. The government urges that *Fannon* is distinguishable from the instant case because *Fannon* involved a pre-flight search rather than a post-flight search. We need not decide whether that distinction is meaningful. Assuming *Fannon* controls both pre- and post-flight package searches, we hold that it does not retroactively control this search.

2. The *Fannon* panel recognized this principle and acknowledged its probable applicability to its holding. *See* 556 F.2d at 965 n.16, *quoting United States v. Peltier, supra.*

3. The *Fannon* panel apparently disagreed, as well. *See* n.2, *supra.*

ing the defendant's motion to suppress and remanded for a determination of whether or not he had consented to the search.

*Fannon,* however, enunciated a broad rule applying Fourth Amendment standards to all airline searches. The panel, relying in part on portions of 49 U.S.C. § 1511 enacted after *Davis,* concluded:

> that in appropriating the efforts of private air carriers in aid of the government's administrative scheme to strengthen the security of air transportation, Congress supplanted whatever common law power of search air carriers may have had and subjected such searches to the Fourth Amendment's standard of reasonableness.

556 F.2d at 965. Therefore, the government was considered to be significantly involved in an airline freight clerk's search of a package left for shipment even though no government agents were present and no government action influenced the clerk's decision to search, and despite the fact that the searching clerk was looking for drugs rather than for explosives or weapons.

█ We think that retroactive application of *Fannon* is both unnecessary and unwise. Admitting the seized drugs into evidence in this case does not impugn the integrity of the court or impair the reliability of the fact-finding process. Moreover, suppressing the seized evidence would not further the deterrent function of the exclusionary rule. *See Tehan v. United States ex rel. Shott,* 382 U.S. 406, 413, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). The airline employee acted in good faith when he searched the package and the federal officers to whom he transferred the fruits of the search had no reason to believe the search was improper.[4] *See United States v. Peltier, supra,* 422 U.S. at 542, 95 S.Ct. 2313. Finally, the "reliability and relevancy" of the evidence on the issue of the defendant's guilt is unquestionable. *See Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). *See also United States v. Pelti-*

er, *supra* 422 U.S. at 539, 95 S.Ct. 2313. *See generally Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (factors relating to retroactivity listed).

We conclude that the district court erroneously applied *Fannon* retroactively in this case, and its order suppressing the evidence is, therefore, reversed.

---

4. Prior decisions of this court as well as other courts of appeals may well have led the agents to believe that the search in question was private in character. *See, e. g.,* cases cited in *United States v. Fannon, supra* at 964 nn.9–13.